#s 6305036 and 3125086 File No. 5250

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GTS TRANSPORTATION CORPORATION, ROMAN BURZA, and TOMAS STIRBYS,<br><br>Plaintiffs,<br><br>v.<br><br>TEAM LINE, LLC d/b/a ROGUE CARRIER, INC.; ARTHUR PROSKURINAS, ROMAN IESYPOV; KHALILILLO ABDULLAEV; MAKSIM KARDASEV; SAULIUS LAURYNAS; and AISTE RIMKUTE; ROGUE CARRIER, INC. as alter ego of TEAM LINE, LLC;<br><br>Defendants. | Case No. 24-cv-01633<br>Hon. Mary M. Rowland<br>Jury Demanded |

**FOURTH AMENDED COMPLAINT**

NOW COME the Plaintiffs, GTS TRANSPORTATION CORPORATION (hereinafter, the "Plaintiff" or "GTS"); ROMAN BURZA ("Burza"); TOMAS STIRBYS ("Stirbys") (Collectively, the "Plaintiffs"), by and through their attorneys at Zane D. Smith and Associates, Ltd. and Law Office of Michael C. Goode, and for their Complaint against the Defendant(s), TEAM LINE, LLC also d/b/a ROGUE CARRIER, INC. ("Team Line"); ARTHUR PROSKURINAS ("Proskurinas"); ROMAN IESYPOV ("Iesypov"); MAKSIM KARDASEV ("Kardasev"); KHALILLILLO ABDULLAEV ("Abdullaev"); SAULIUS LAURYNAS ("Laurynas"); and AISTE RIMKUTE ("Rimkute"); (Collectively, the "Defendants"), and ROGUE CARRIER, INC. ("Rogue"), and state as follows:

**INTRODUCTION**

1. This action arises as a result of the Defendants' egregious misconduct in wrongfully, knowingly and deliberately accessing GTS' computer system, with malicious intent,

and misappropriating its confidential, proprietary and trade secret information, as well as intentional interference with prospective business relationship and targeted publication of false statements designed to injure the Plaintiffs.

2. Defendants' misconduct gives rise to both federal and state law claims for relief. With this Lawsuit, the Plaintiffs asserts multiple causes of action: (1) violation of the United States Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.; (2) Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq*.; (3) violation of the Illinois Trade Secrets Act, 765 ILCS 1065; (4) common law defamation *per se*; (5) tortious interference (intentional interference with business relations); (6) breaches of fiduciary duties; (7) vicarious liability; (8) conversion; (9) civil conspiracy; and (10) injunctive relief. Plaintiff may add additional causes of action following further investigation and discovery.

**PARTIES**

3. GTS is an Illinois Corporation, engaged in the business of interstate cargo and freight hauling, which, at all relevant times, was located and maintained its principal office in the County of DuPage, state of Illinois. GTS also maintains offices in several states and foreign countries.

4. Stirbys is an individual and president of GTS, who, at all relevant times, resided in the County of DuPage, State of Illinois.

5. Burza is and was at all relevant times the Director of European Operations of GTS.

6. Team Line is an Illinois limited liability company with its principal place of business believed to be located in Lockport, Illinois. Team Line, at all relevant times, has been engaged in the business of trucking transportation services and was at all relevant times a competitor of GTS. Upon, information and belief, recently it has also been operating as Rogue.

7. Proskurinas is a former agent of GTS who resigned in or about March of 2022. Proskurinas began working for Team Line shortly after his termination from GTS, and, upon information and belief, worked at Team Line until April or May of 2025.

8. Iesypov is a former agent of GTS who resigned in or about September of 2022. Iesypov, began working for Team Line shortly after his termination from GTS, and, upon information and belief, currently works for Team Line.

9. Kardasev is a former agent of GTS who resigned in or about September of 2022. Kardasev began working for Team Line shortly after his termination, and, upon information and belief, currently works for Team Line.

10. Abdullaev is the sole owner, sole managing agent, and founding member of Team Line.

11. Laurynas is a former agent of GTS who resigned in or about February of 2024. Upon information and belief, Laurynas immediately went to work for Team Line after leaving GTS.

12. Rimkute is, and, at all relevant times, was the spouse of Laurynas who worked for Team Line. Upon information and belief, she is the current employee of Team Line and was its employee or agent at all times relevant to this Complaint.

13. Rogue is an Illinois corporation with its principal place of business believed to be located in Illinois. Despite being disguised as a separate entity; upon information and belief, Rogue is, in whole or in part, believed to be owned, controlled, and operated by the same individuals who own and control Team Line, LLC, and is being used as a continuation of Team Line's business operations.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331, namely the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030, *et seq*.); the Stored Communications Act ("SCA") (18 U.S.C. § 2701, *et seq*.); and over the pendent state law claims pursuant to 28 U.S.C. § 1367(a).

15. Venue is proper in this district court under 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this Lawsuit occurred in this district.

## GENERAL FACTUAL ALLEGATIONS

### A. Background between GTS and Team Line

16. Between July of 2020 and March of 2022, Proskurinas worked as a dispatcher at GTS, during that time he formed friendships with Iesypov, Kardasev, and numerous GTS truck drivers who delivered loads for GTS.

17. Between August 2020 and September of 2022 Iesypov worked at GTS, initially starting out as a dispatcher and eventually being promoted to the position of Operations Manager. During his time with GTS, Iesypov formed friendships with Proskurinas and Kardasev, and became familiar with GTS' internal operations, as well as client lists.

18. Between May of 2021 and September of 2022, Kardasev worked at GTS as a dispatcher, during that time he formed friendships with Iesypov, Proskurinas, and numerous GTS truck drivers who delivered loads for GTS.

19. In or about September of 2021, through the efforts of Stirbys, GTS started working with a Canada based company, Traffix. Traffix is a third-party logistics solutions company that provides services in North America, which provides shipping routes to various trucking companies, such as GTS.

20. Upon information and belief, starting in or about September of 2021, Traffix was working exclusively with GTS for specific shipments, including shipments for American Tire Distributions.

21. Between September 17, 2021 and December 7, 2022, GTS received in excess of $1.8 million in revenue from Traffix to GTS.

22. Iesypov, in his position as operations manager became familiar with Traffix, was in charge of maintaining the relationship that GTS had with Traffix, and for renewing contracts with Traffix, and was GTS' primary contact, and entrusted by GTS for that purpose.

23. In or about August of 2022, prior to his resignation from GTS, through its agent, Iesypov received a request from Traffix for a proposal to renew the contract between Traffix and GTS.

24. Iesypov led GTS to believe he was negotiating and working on behalf of GTS to renew and extend the GTS/Traffix contract into the next year. However, a formal response from GTS never came through as a result of Iesypov's intentional failure to either respond to Traffix's request for proposal, and/or take those steps necessary to secure the continued relationship between GTS and Traffix.

25. Iesypov knew at all times that GTS intended and desired to continue its profitable relationship with Traffix.

26. Upon information and belief, prior to their departure from GTS, Iesypov and Kardasev were contacted by Abdullaev, who enticed them to leave GTS and join Team Line.

27. Prior to Iesypov's, Proskurinas', and Kardasev's departures from GTS, based on the proprietary information of GTS, including but not limited to contacts, pricing, rates, schedules

and cost structures of GTS, relative to Traffix, Iesypov immediately undertook steps and actions to secure from Traffix, that business which had theretofore, been business Traffix had sent to GTS.

28. The steps undertaken by Iesypov, Kardasev, and Team Line, upon information and belief, include bribes or kickback payments to Traffix's employees or agents, including but not limited to payments made to Michael Shaub, Melissa guernsey, and/or Vlad Startsev, all of whom hold various managerial roles with Traffix.

29. The bribes or kickback payments, upon information and belief, were and are intended to keep Traffix engaged in business with Team Line and divert business away from GTS.

30. Furthermore, upon information and belief, in addition to Traffix, Iesypov, Kardasev, and/or Proskurinas prior to, or after, their departure from Team Line, undertook steps to intentionally divert other customers of GTS to work with Team Line, instead of GTS.

31. Those other customers include, but are not limited to, Redwood Logistics, LLC; C.H. Robinson; and Schneider National, Inc.

32. As with Traffix, upon information and belief, Iesypov, Kardasev, and Team Line, intentionally diverted business from GTS by paying bribes or kickbacks to managing employees of C.H. Robinson; Schndeider National, Inc.; and Redwood Logistics, LLC.

33. Upon information and belief, those employees include, but are not limited to Ryan Killani and Dillon Horn of Redwood Logistics, LLC; Eddie Breen of C.H. Robinson; and Eimantas Zukauskas of Schneider.

34. Upon Iesypov's arrival at Team Line, he immediately completed the securing of GTS's business from Traffix and other clients of GTS, and secured Traffix and other companies as customers for Team Line, using the proprietary information known to him from his status as an agent of GTS.

35. GTS became aware of Team Line's takeover of its business with Traffix on or about December 16, 2022, when its truck driver went to pick up a load on a previously well-established Traffix route with ATD (American Tire Distributions) and learned that a trailer leased by Team Line was already there, with the load ready to be picked up by Team Line.

36. Around the same time, starting in late 2022, Team Line, with the help of Iesypov, Proskurinas, and Kardasev, with approval or knowledge of Abdullaev, began a campaign designed to damage GTS' reputation, to derail its business operations, to hire GTS' agents, and to cause internal turmoil and chaos at GTS.

**B. Trade Secrets**

37. GTS provides a range of cargo and freight services throughout the continental United States and its revenues come from fees earned as a result of customer relationships. The value of customer relationships, influenced largely through GTS's reputation as a reliable, trustworthy and honest enterprise, is therefore, central to GTS' business viability.

38. GTS has developed at significant cost, a proprietary list of customers, through at least 15 years of doing business in the freight and cargo hauling business and marketing. The developed relationships of GTS, with its many shippers and truck drivers, and others, as well as GTS's confidential, proprietary contact information and data about customers and potential customers, which include but are not limited to established tucking routes, make up the framework upon which GTS has grown, and utilizes as a business plan for future growth.

39. In addition to proprietary customer information, GTS developed a confidential list of truck drivers, with whom GTS contracts to transport various shipments and cargos. GTS has established relationships with the truck drivers and relies heavily on them as part of its business.

40. The proprietary list of drivers that GTS has culled over the years, is critical to GTS to provide reliable pickup and delivery times to those who ship with GTS. It is this level of reliability that contributed to GTS' growth over the years.

41. GTS maintains its lists of truck drivers, as well as its customer list and data on its server. The lists of truck drivers and customers and related data are password-protected and private.

42. Indeed, GTS takes care to protect its trade secrets (i.e. the customer list and associated data, and trucker list and associated data). Security includes password protection and multi-factor authentication.

43. GTS only provides access to confidential information to those that need the information to perform their jobs.

**C. Hacking and distribution of proprietary and private data along with defamatory statements**

44. Between February 2 and February 12, 2024, and possibly other dates, upon information and belief Defendants, Proskurinas, Iesypov, Abdullaev, Kardasev, and Rimkute colluded with and/or recruited Laurynas, an agent of GTS at the time, to obtain his GTS password and login credentials for the GTS computer system. Those login credentials were subsequently used by the Defendants to log into GTS computer system and download GTS proprietary data.

45. Specifically, upon information and belief, Rimkute brought Laurynas' laptop to Team Line office and the laptop was used to obtain Laurynas' passwords that allowed Team Line to access GTS database, as well as internal communications.

46. In the alternative, Defendants, Proskurinas, Iesypov, Abdullaev, Rimkute, and/or Kardasev were either able to obtain and/or able to manipulate the password(s) of at least one of GTS employees, and Defendants did use that password to log into and invade GTS' private

database.

47. Plaintiffs were able to verify that the Defendant's, Team Line's, IP address was used in order to log into the Plaintiff's system, using Laurynas' user ID and Password.

48. After logging into the GTS' database, Defendants downloaded GTS truck drivers' list and associated data, which includes the GTS cost structure, rates they are paid, billing and pricing structure, as well as private identifying information, such as loads and amounts charged to GTS' customers.

49. Defendants, after "hacking" into, and invading GTS's computer system as described above, also utilized that information to post false statements of a defamatory nature, intended to destroy GTS's reputation, and to cause GTS truck drivers to leave GTS.

50. Upon information and belief, other private information, such as customer lists and compensation structure for agents of GTS were downloaded by the Defendants.

51. After hacking into GTS system, Defendants distributed said private information on February 10, 2024, via the Telegram platform and, possibly, emails to numerous third parties and the truck drivers that work for GTS.

52. On or about February 10, 2024, Defendants, using the alias of "Robin Hood," circulated the following false and defamatory email communication to a private list of truck drivers who were being contracted by GTS, as well as other third parties:

> "Hello, I am a current dispatcher at GTS Lithuania office
> The boss is forcing us to STEAL money from drivers.
> Roman Burza and Tomas Stirbys are fascists.
> I will be quitting this company soon, so I have decided to send you your original confirmations via email.
> The rate confirmations are only for the month of JANUARY.
> They have stolen more money from you.
>
> You are not alone, there are many more drivers that I have compiled who are victims.

This calls for a CLASS ACTION LAWSUIT.
Drivers, please stand together and put an end to this fascist company.
You can find the full list of all drivers and rate confirmations in the Telegram channel below.
Please share with your friends and stay away from this company."

53. In the above email, Burza and Stirbys are falsely accused of being fascists, a word of extreme malice in Europe, where many GTS drivers came from, and where GTS maintains certain operations.

54. Further, the communication falsely accuses Burza and Stirbys of stealing money from its drivers.

55. Moreover, GTS is falsely accused of being a "fascist company."

56. Defendants also circulated GTS' truck drivers' private information, such as their rates and identifying information.

57. On or about February 13, 2024, Defendants made the following post[1] on the social media platform, Telegram:

[1] QR Code has been removed from this filing.




58. In the above post, Stirbys is falsely identified as a "Scam Boss" and it is falsely implied that GTS is engaged in some form of theft, fraud, and/or "scam."

59. Following the foregoing "hacking" incident, the Defendants, in particular Team Line, Iesypov, and Kardasev, began a targeted campaign of seeking to hire GTS' agents and employees and to invite them to a "warmer" place. The foregoing Defendants, upon information and belief, used the information, such as compensation structures, that they obtained through the data breach to help them hire and retain GTS' agents.

60. It is believed that without appropriate relief, the Defendants will continue to make false and defamatory statements and use GTS' private data, which was obtained by the Defendants

by illegal means, to their advantage and to the detriment of the Plaintiffs. It is clear that the Defendants' intention was to disrupt the relationship of GTS and its truck drivers, to disrupt GTS' ability to comply with its obligations under contracts with customers, and to otherwise destroy GTS corporation.

**D. Coordinated online posts by defendants designed to damage Plaintiffs and GTS's business**

61. On or about January 24, 2024, Iesypov published the following false and defamatory comments about GTS and Stibrys via google review:



Roman Iesypov
4 reviews
3 hours ago NEW

First and foremost , the owner of the company Tomas , greedy , egocentric , careless about everyone surrounding him
Loads that are dedicated to the the company with overpriced numbers was provided to the company because of the company wide bribery to the brokers , meanwhile the prices to drivers was provided X2 less and writing off the price for trailer fee
for example , load for 4000$ was given to the driver for 2000$ , 2000$ was a trailer fee on this load which went directly to mr Tomas
Lease drivers which are essentially W2 drivers for the company was 1099 drivers with prices per truck of up to 1700$ a week
practices of selling trucks to the drivers with 50% down , and then the driver was never able to take the truck away from the company until fully paid off with increase of 30% mark up prices
Unethical , unprofessional relationship with company employees
reaching out to all the brokers that I know for a fact was paid by Tomas regarding business practices

5

62. On or about February 7, 2024, Iesypov published the following false and defamatory comment about GTS Freight and Stirbys via google reviews:


Roman Iesypov
2 reviews
3 weeks ago NEW
Scam company as the scam owner , if you booking loads through GTS freight , most probably load was given to GTS logistics and they are double brokering the loads
Owner of the company doing bad business practices by using his broker company to put reports on rival trucking companies , meanwhile Omar , the director of brokerage has 0 clue what Tomas is doing and will be responsible for it
Unethical , unprofessional
1

63. On or about January 24, 2024, Proskurinas published the following false and defamatory comment about GTS and Stibrys via google review:

> Worked as a dispatcher at this company for over a year. Everything seemed fine in the beginning. the boss and management gave off a good, trustworthy energy. Sadly this is all a fake image and this company is rotten to the bone. There is all kinds of shady things going on behind the closed doors. They will manipulate you, lie to you, do thing behind your back and you will never known the truth. They are scared to say the truth because the truth is nasty.

64. On or about January 24, 2024, Proskurinas published the following false and defamatory comment about T Lines and GTS via google review:

> Double broker. Booking loads through MC 675058 (GTS Transportation) and selling through T-Lines
> Stay away[.]

65. The foregoing posts by Iesypov and Proskurinas were false, intentional, malicious and designed to damage Plaintiffs' reputation and damage GTS' business.

66. The posts were made in a coordinated effort and in conjunction with the Defendants' hacking and misappropriation of GTS' data.

67. Plaintiffs have reason to believe that Defendants continue to make false posts online under various aliases.

**E. Poaching of GTS employees and/or agents**

68. On numerous occasions after their departure from GTS, Defendants, Proskurinas, Iesypov, and Kardasev, communicated with or approached GTS' employees and/or agents.

69. Upon information and belief, the foregoing Defendants, relied on the information that they gained from the time that they worked at GTS and/or from the data breach of February 2024, which they spearheaded.

70. During their communications with GTS' employees and/or agents, upon information and belief, Proskurinas, Iesypov, and Kardasev, provided false information to the employees and/or agents about GTS and Stirbys, and encouraged them to leave GTS and work for Team Line.

71. Defendants relied on the information obtained through the data breach of February 2024, and potentially at other times, to lure GTS agents to work for Team Line.

72. Upon information and belief, Team Line and Abdullaev were aware of, approved, and or encouraged such conduct of Proskurinas, Iesypov, Kardasev, Rimkute, and Laurynas, as such conduct could only result in injury to GTS and profit for Abdullaev and his company, Team Line.

**F. Successor and Alter Ego Conduct by Rogue Carrier, Inc.**

73. Upon information and belief, Team Line is currently carrying on part of its business under the name Rogue Carrier, Inc., and is in the process of transferring part of its assets, customer relationships, and operations to Rogue Carrier, Inc. in order for Team Line to evade liability for its unlawful conduct.

74. Upon information and belief, Rogue is operated, in whole or in part, by the same principals and/or agents who control Team Line, and performs the same transportation and logistics services previously performed by Team Line.

75. Upon information and belief, Rogue is using the some of the same misappropriated GTS customer information, trade secrets, and business relationships obtained by Team Line through unlawful conduct described herein.

76. Upon information and belief, Rogue is currently doing business with Traffix and other companies that were former clients of GTS, including customers wrongfully diverted from GTS by Team Line and its agents.

77. The transfer of select business operations, customers, and assets from Team Line to Rogue Carrier, Inc. is being done without adequate consideration and for the purpose of hindering, delaying, or defrauding Plaintiffs and avoiding judgment in this action.

78. Rogue is therefore a mere continuation of Team Line and is liable for Team Line's wrongful acts under theories of successor liability, alter ego, and fraudulent transfer.

**COUNT I (by GTS against the Defendants)**
**Violation of the Computer Fraud and Abuse Act**
**18 U.S.C. § 1030, *et seq*.**

79. GTS restates and realleges paragraphs 1 through 72, as if fully set forth herein.

80. GTS computer system and server constitute a "protected computer" under the meaning of the Computer Fraud and Abuse Act ("CFAA"). 18 U.S.C. § 1030(e)(2)(B).

81. Defendants, in collusion with each other, intentionally accessed GTS' protected computer data without authorization and obtained information. 18 U.S.C. § 1030(a)(2)(C).

82. Obtaining and using such information for anyone's benefit, other than GTS's, violated CFAA.

83. Defendants' acts were intentional, and without GTS's knowledge, permission, or authorization.

84. Defendants acted knowingly and with intent to defraud, and in furtherance of the intended fraud obtained valuable and private trade secrets and confidential information and/or other valuable information or the valuable use of the secure GTS system, which has a value exceeding $5,000.00 in a one-year period, in violation of 18 U.S.C. § 1030(a)(4).

85. Defendants' conduct caused GTS a loss of over $5,000.00 in a one-year period, including the costs associated with loss of drivers and business, cost of responding to the offense, conducting a damage assessment, attempting to restore the data, program, system, or information to its condition prior to the offense, to conduct a computer system analysis, and other consequential damages incurred and that have been incurred, and will be incurred because of the disruption caused by the Defendants.

86. Because the Defendants' conduct involves loss to GTS during a one-year period aggregating at least $5,000.00 in value (as described in 18 U.S.C. § 1030(c)(4)(A)(i)(I)), GTS is entitled to bring this civil action and is entitled to economic damages. 18 U.S.C. § 1030(g).

WHEREFORE, Plaintiff, GTS TRANSPORTATION CORPORATION, respectfully requests the Court:

A. Enter a judgment in its favor for Defendants' violation of the Computer Fraud and Abuse Act;
B. Award Plaintiff punitive damages;
C. Award Plaintiff compensatory damages and all available statutory relief, including consequential damages, and attorneys' fees;
D. Award Plaintiff all necessary injunctive relief to abate the Defendants, TEAM LINE, LLC; ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; KHALILLO ABDULLAEV; AISTE RIMKUTE; and SAULIUS LAURYNAS, from

further illegally accessing Plaintiff's system, sharing, and/or otherwise using Plaintiff's information; and grant such other and further relief available under Computer Fraud and Abuse Act, as this court deems just.

E. Enjoin all Defendants from participating in the posting of all defamatory, prejudicial, false statements relating to GTS, and all GTS employes and agents.

**COUNT II (by GTS against the Defendants)**
**Violation of the Stored Communication Act**
**18 U.S.C. § 2701, *et seq*.**

87. GTS restates and realleges paragraphs 1 through 72 and 79 through 86, as if fully set forth herein.

88. GTS computer system constitutes a facility within the meaning of the Stored Communications Act ("SCA").

89. Defendants intentionally accessed GTS' facility without authorization. 18 U.S.C. § 2701(a)(1).

90. By using and accessing GTS' facility, Defendants engaged in willful and intentional conduct, which appears to be geared toward harming GTS reputation, business, and income.

91. Defendants' conduct has caused GTS to be damaged in an amount more than $1,000.00.

92. Because GTS is a provider and/or subscriber of electronic communication services and/or has been aggrieved by Defendants' violation of the SCA, and because the Defendants acted knowingly and intentionally, GTS is entitled to bring this civil action and is entitled to recover relief and damages. 18 U.S.C. § 2707(a).

93. As a result of Defendants' conduct, GTS is entitled to all damages set forth in 18 U.S.C. 2707, including injunctive relief, compensatory damages, reasonable attorneys' fees and costs, and punitive damages as determined by the Court.

WHEREFORE, Plaintiff, GTS TRANSPORTATION CORPORATION, respectfully requests the Court enter a judgment in its favor for Defendants' violation of the Stored Communications Act; award Plaintiff punitive damages; Award Plaintiff compensatory damages and all available statutory relief, including consequential damages, and attorneys' fees; award Plaintiff all necessary injunctive relief to abate the Defendants, TEAM LINE, LLC; ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; KHALILLO ABDULLAEV; AISTE RIMKUTE; and SAULIUS LAURYNAS, from further illegally accessing Plaintiff's system, sharing, and/or otherwise using Plaintiff's information; and grant such other and further relief available under Stored Communications Act, as this court deems just.

**COUNT III (by GTS against the Defendants)**
**Violation of the Illinois Trade Secrets Act**
**765 ILCS 1065 *et seq*.**

94. GTS restates and realleges paragraphs 1 through 72 and 79 through 93, as if fully set forth herein.

95. The Illinois Trade Secrets Act ("ITSA") defines a "trade secret" as information "including, but not limited to technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers" that is (a) sufficient secret to derive economic value . . . from not being generally known to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality. 765 ILCS 1065/2(d).

96. A person misappropriates a trade secret by, among other things, disclosing the trade secret despite knowing that it was "acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use" or from a person who had a duty to maintain its secrecy or use. 765 ILCS 1065/2(b)(2)(B)(II) and (III).

97. The ITSA authorizes injunctive and other relief to remedy "actual or threatened misappropriation" of trade secrets. 765 ICLS 1065/3(a).

98. Plaintiff took affirmative measures to keep all of its confidential and proprietary information (including lists of truck drivers and associated data and lists of customers) protected from disclosure from any unauthorized third party.

99. Plaintiff has no adequate remedy at law to protect against the illegal misappropriation and use of its confidential information and other trade secrets appropriated by the Defendants. Injunctive relief is, therefore, necessary and appropriate to restrain the illegal misappropriation, dissemination, and us of such confidential information and trade secret information pursuant to Section 3 of the ITSA. *See* 765 ILCS 1065/3.

100. Unless the Defendants are restrained and enjoined from continuing to access GTS' system and using the confidential information, GTS will suffer immediate and irreparable injuries in that it will lose business, truck drivers, and Defendants will continue to have access and make use of GTS's trade secrets for their own benefit and to the detriment of the Plaintiffs.

101. As a direct and proximate result of the Defendants' actual and threatened misappropriation of GTS' confidential information and other trade secrets, GTS has suffered damages in amount yet to be determined and Defendants, upon information and belief, have been and continue to be unjustly enriched by hurting GTS' business and otherwise profiting from the

information taken from GTS. Therefore, pursuant to Section 4 of the ITSA, GTS is entitled to recover damages. *See* 765 ILCS 1065/4.

102. It is inevitable that Defendants will use the confidential, proprietary trade secret information at issue and have already used it to hurt GTS' business.

103. Defendants are in violation of the ITSA for knowingly taking and/or accepting the receipt of GTS' wrongfully misappropriated confidential, proprietary, and trade secret information.

WHEREFORE, GTS respectfully requests that the Court enter a judgment in it favor; grant GTS both preliminary and permanent relief pursuant to 765 ILCS 1065/1, *et seq*. restraining and enjoining Defendants from the threatened or actual misappropriation of GTS proprietary trade secrets and confidential information; a finding that Defendants', TEAM LINE, LLC; ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; KHALILLO ABDULLAEV; AISTE RIMKUTE and SAULIUS LAURYNAS, acts and conduct constitute the actual or threatened misappropriation of trade secrets in violation of 765 ILCS 1065/1, *et seq*., and that such acts and conduct are and have been willful and malicious; compensatory and increased damages sustained as a result of Defendants' wrongful actions, together with an accounting of Defendants' profits and unjust enrichment arising from such actions; and order compelling Defendants to return any and all of GTS' confidential information and proprietary trade secrets in Defendants' possession, custody or control, and wherever and however stored physically, electronically, and/or other memorialization of such purloined information; an order requiring Defendants to take down all disseminated private or trade secret information and to stop from further disseminating private or trade secret information, whether through Telegram or other social media, internet, or otherwise; together with such other affirmative relief required to compel compliance with this order; awarding

GTS punitive damages; award GTS attorneys' fees and costs pursuant to 765 ILCS 1065/1, *et seq*.; and such other further relief as this Court deems appropriate and just.

**<u>COUNT IV (by GTS, Burza, and Stirbys against the Defendants)</u>**
**Defamation *per se***

104. The Plaintiffs restate and reallege paragraphs 1 through 72 and 79 through 103, as if fully set forth herein.

105. Defendants worked in collusion with each other and in a coordinated effort made numerous online posts and sent numerous false communications about GTS.

106. Defendants' posts on Telegram, on email communications, and online reviews about the Plaintiffs are false, malicious, and unwarranted.

107. Defendants' statements via posts on Telegram, and on emails implied that Plaintiffs committed some form of a crime; implied that Plaintiffs' lacked the ability or integrity in the performance of their job duties; and prejudiced Plaintiffs in their professions and business.

108. The foregoing statements of the Defendants were intentionally published and disseminated to multiple individuals and constitute defamation *per se*. *See e.g. Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill.2d 558, 580 (2006).

109. As a result of the Defendants' posts and emails containing false, unwarranted, and defamatory information, Plaintiffs have suffered great damages, and are entitled to punitive damages due to the malicious nature of the posts and email.

WHEREFORE, the Plaintiffs, GTS TRANSPORTATION CORPORATION; ROMAN BURZA; TOMAS STIRBYS, pray that this Court enter judgment against the Defendants, TEAM LINE, LLC; ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; AISTE RIMKUTE and KHALILLO ABDULLAEV, in an amount in excess of Fifty Thousand Dollars, plus punitive damages, plus the Plaintiff's costs of this action, and further, enjoin the Defendants

from making further defamatory statements and require them to take down defamatory posts and retract defamatory emails; and for that relief deemed proper by this honorable Court.

**COUNT V – INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP WITH TRAFFIX (by GTS against the Defendants)**

110. The Plaintiffs restate and reallege paragraphs 1 through 72 and 79 through 109, as if fully set forth herein.

111. GTS had a valid business relationship and expectaned to renew its contract with Traffix, had it not been for the actions of the Defendants.

112. Defendants, Team Line, Proskurinas, Iesypov, Abdullaev, and Kardasev, knew about GTS' relationship with Traffix and at all times sought to take the benefit of said relationship by taking away Traffix business from GTS and using it to their advantage.

113. These Defendants intentionally interfered with the relationship with the help of Iesypov by concealing Iesypov's failure to renew GTS' contract with Traffix and then capitalizing on Iesypovs' knowledge of the contacts at Traffix to take away GTS business.

114. Aside from the foregoing, the Defendants publicly spread false information about GTS and its agents, in order to induce Traffix to do business with Team Line instead of GTS.

115. Defendants, Team Line, Iesypov, and Kardasev, also, upon information and belief, bribed Traffix's employees or agents in order to induce them to do business with Team Line.

116. Defendants, Team Line, Proskurinas, Iesypov, Abdullaev, Kardasev, Rimkute and Laurynas acted in a concerted effort to accomplish the foregoing goals.

117. Traffix in fact terminated most of its business relationship with GTS and started doing business with Team Line, resulting in great losses for GTS.

118. Defendants' conduct was intentional and malicious.

119. As a result of the foregoing, GTS has been damaged.

WHEREFORE, the Plaintiffs, GTS TRANSPORTATION CORPORATION, pray that this Court enter judgment against the Defendants, TEAM LINE, LLC; ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; AISTE RIMKUTE; SAULIUS LAURYNAS; and KHALILLILLO ABDULLAEV in an amount in excess of Fifty Thousand Dollars, plus punitive damages, plus the Plaintiff's costs of this action, and further, enjoin the Defendants from making further defamatory statements and require them to take down defamatory posts and retract defamatory emails; and for that relief deemed proper by this honorable Court.

**COUNT VI – INTENTIONAL INTERFERENCE WITH ONGOING BUSINESS RELATIONSHIPS (GTS against the Defendants)**

120. The Plaintiffs restate and reallege paragraphs 1 through 72 and 70 through 119, as if fully set forth herein.

121. GTS had valid business relationships with numerous agents and/or employees, including truck drivers, dispatchers, and managers.

122. GTS also had valid business relationships with various customers, including, but not limited to Redwood Logistics, LLC; C.H. Robinson; and Schneider National, Inc.

123. Defendants, Team Line, Proskurinas, Iesypov, Abdullaev, and Kardasev, knew about GTS' relationship with its agents and customers and at all times sought to take the benefit of said relationships.

124. Notably, Defendants intentionally "hacked" into GTS database and obtained information proprietary knowledge and information regarding GTS' loads, rates, and compensation structure.

125. Defendants then spread stolen data via Telegram and Email in order to create internal chaos at GTS.

126. Defendants then used information that they obtained as a result of hacking, including, but not limited to compensation structures, and employee and/or agents' private, personal data, in order to entice GTS employees to come and work for Team Line and create the appearance of a stable and friendly work environment. Indeed, Defendants continue to target GTS employees and agents.

127. Furthermore, Defendants intentionally targeted, and continue to target, Plaintiff's customers, using information that they gained while they worked for GTS, and/or using the information that they gained as a result of breaching GTS database.

128. Further, the Defendants, upon information and belief, use tactics such as bribery and kickbacks in order to entice representatives of GTS customers to work for Team Line.

129. Numerous GTS agents in fact left GTS and started working for Team Line.

130. Furthermore, numerous GTS customers have transferred most of their business from GTS to Team Line.

131. Defendants' conduct was intentional and malicious.

132. Defendants' conduct is ongoing.

133. As a result of the foregoing, GTS has been damaged, and continues to be damaged.

WHEREFORE, the Plaintiffs, GTS TRANSPORTATION CORPORATION, pray that this Court enter judgment against the Defendants, TEAM LINE, LLC; ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; AISTE RIMKUTE; SAULIUS LAURYNAS; and KHALILLILLO ABDULLAEV in an amount in excess of Fifty Thousand Dollars, plus punitive damages, plus the Plaintiff's costs of this action, and further, enjoin the Defendants from making further defamatory statements and require them to take down defamatory posts and retract defamatory emails; and for that relief deemed proper by this honorable Court.

**COUNT VII – BREACH OF FIDUCIARY DUTY (Directed by GTS against Iesypov)**

134. The Plaintiffs restate and reallege paragraphs 1 through 72 and 79 through 133, as if fully set forth herein.

135. Iesypov, as a 1099 employee and Operations Manager, was a fiduciary of GTS and was entrusted with trade secrets, as well as client information.

136. Iesypov breached the fiduciary duty owed to GTS in one or more of the following ways:

a. Failed to timely renew the contract with Traffix or notify GTS about the need to renew said contract;

b. Utilized his knowledge of GTS' relationship with Traffix in order to interfere with GTS' business relationship with Traffix;

c. Disclosed private contact information to Team Line and Abdullaev in order to take away Traffix business relationship from GTS and transfer it to Team Line;

d. Otherwise acted inconsistent with his fiduciary obligations to GTS.

137. As a direct result of one or more of the foregoing breaches of fiduciary duties, GTS suffered tremendous business losses.

138. Iesypov's conduct was intentional and malicious.

WHEREFORE, the Plaintiffs, GTS TRANSPORTATION CORPORATION, pray that this Court enter judgment against the Defendant, ROMAN IESYPOV in an amount in excess of Fifty Thousand Dollars, plus punitive damages, plus the Plaintiff's costs of this action, and further, enjoin the Defendants from making further defamatory statements and require them to take down defamatory posts and retract defamatory emails; and for that relief deemed proper by this honorable Court.

**COUNT VIII – BREACH OF FIDUCIARY DUTY (by GTS, directed at Proskurinas, Iesypov, Laurynas, and Kardasev)**

139. The Plaintiffs restate and reallege paragraphs 1 through 72 and 79 through 138, as if fully set forth herein.

140. Proskurinas, Iesypov, Laurynas, and Kardasev, as 1099 employees, were fiduciaries of the Plaintiff, who were entrusted with sensitive information and trade secrets of GTS.

141. Proskurinas, Iesypov, Laurynas, and Kardasev, acted in a coordinated effort against the interests of GTS.

142. Proskurinas, Iesypov, Laurynas, and Kardasev, breached their fiduciary duty to GTS in one or more of the following ways:

a. Utilized their knowledge of the truck drivers and others who worked for GTS in order to entice them to leave GTS and work for Team Line;

b. Utilized their knowledge of GTS security system and password maintenance in order to gain access to and/or hack into GTS computer system and steal the data of GTS' truck drivers and agents;

c. Engaged in a campaign of spreading false and defamatory information about GTS and its agents in order to inflict financial damage on GTS and gain a competitive advantage for Team Line;

d. Otherwise breached their fiduciary duties to GTS.

143. As a direct result of one or more of the foregoing breaches of fiduciary duties, GTS suffered tremendous business losses and disruptions to its business.

144. Proskurinas', Iesypov's, Laurynas', and Kardasev's conduct was intentional and malicious.

WHEREFORE, the Plaintiffs, GTS TRANSPORTATION CORPORATION, pray that this Court enter judgment against the Defendant, ARTHUR PROSKURINAS; ROMAN IESYPOV; SAULIUS LAURYNAS, and MAKSIM KARDASEV in an amount in excess of Fifty Thousand Dollars, plus punitive damages, plus the Plaintiff's costs of this action, and further, enjoin the Defendants from making further defamatory statements and require them to take down defamatory posts and retract defamatory emails; and for that relief deemed proper by this honorable Court.

**COUNT IX – VICARIOUS LIABILITY (by Plaintiffs, directed at Abdullaev and Team Line)**

145. The Plaintiffs restate and reallege paragraphs 1 through 72 and 79 through 144, as if fully set forth herein.

146. At the time the wrongful conduct alleged in this complaint occurred, including hacking, defamatory and false publications, intentional interference with GTS business relations, and recruitment of GTS drivers and agents, Proskurinas, Iesypov, and Kardasev were employees, apparent employees, agents, and or apparent agents of Abdullaev and Team Line.

147. Upon information and belief, Abdullaev personally colluded with Proskurinas, Iesypov, and Kardasev and encouraged them to engage in the wrongful acts complained of, for the benefit of his company, Team Line, wherein he is the sole managing agent.

148. All of Proskurinas', Iesypov's, and Kardasev's wrongful conduct complained of in this Complaint occurred within the scope of their employment, apparent employment, agency, or apparent agency for Team Line and Abdullaev.

149. As their employers, apparent employers, principals, and/or apparent principals, Defendants, Team Line and Abdullaev, are vicariously liable for the negligent and/or malicious acts of the Defendants, Proskurinas, Iesypov, and Kardasev.

150. As a direct and proximate result of one or more of the foregoing wrongful acts, Plaintiffs suffered damages and continue to suffer damages.

WHEREFORE, the Plaintiffs, GTS TRANSPORTATION CORPORATION, ROMAN BURZA, and TOMAS STIRBYS, pray that this Court enter judgment against the Defendants, TEAM LINE, LLC and KHALILILLO ABDULLAEV, in an amount in excess of Fifty Thousand Dollars, plus punitive damages, plus the Plaintiff's costs of this action, and further, enjoin the Defendants from making further defamatory statements and require them to take down defamatory posts and retract defamatory emails; and for that relief deemed proper by this honorable Court.

**COUNT X – CONVERSION (By GTS against all Defendants)**

151. The Plaintiffs restate and reallege paragraphs 1 through 72 and 79 through 150, as if fully set forth herein.

152. GTS has a right to its data and information that contains GTS' confidential information and trade secrets.

153. GTS has absolute and unconditional right to the immediate possession of its data and information that contains GTS' confidential information and trade secrets.

154. Defendants wrongfully and without authorization assumed control, dominion, or ownership of GTS' data and information that contains GTS' confidential information and trade secrets.

WHEREFORE, GTS respectfully requests that this Court enter judgment its favor; award GTS compensatory damages in an amount to be determined at trial; award GTS punitive damages in an amount to sufficient to punish Defendants, ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; TEAM LINE, LLC; SAULIUS LAURYNAS; AISTE RIMKUTE and KHALILILLO ABDULLAEV, and enjoin such misconduct in the future; award GTS costs

incurred in bringing this action; and such other and further relief as this court may deem appropriate and just.

**COUNT XI – CIVIL CONSPIRACY (By Plaintiffs against the Defendants)**

155. The Plaintiffs restate and reallege paragraphs 1 through 72 and 79 through 154, as if fully set forth herein.

156. As is more fully alleged above, Defendants conspired with each other and agreed to pursue a scheme to violate federal and Illinois law, to misappropriate GTS' confidential information, to defame the Plaintiffs, to entice GTS's agents to work for Team Line, to inflict financial injuries upon the Plaintiffs, to interfere with GTS' business relationships with customers, to defame Plaintiffs, and to misappropriate proprietary and trade secret information, using concerted action.

157. Each Defendant knowingly and voluntarily participated in the common scheme. As alleged in detail above, each Defendant, alone or in concert, committed tortious acts in furtherance of the scheme.

158. Investigation is ongoing, but it appears that since Proskurinas', Iesypov's, and Kardasev's departure from GTS, Abdullaev and Team Line led a conspiracy to unlawfully access, misappropriate, use and disclose GTS' trade secrets and confidential information, upon information and belief to recruit Laurynas to help them with access of GTS' data, and to solicit GTS' clients in violation of federal and Illinois law.

159. Furthermore, upon information and belief, Iesypov, Proskurinas, Kardasev, Abdullaev, and Rimkute, conspired to obtain login credentials of Laurynas and to gain access to GTS' internal data.

160. Defendants understood the purpose of their conspiring agreements and actions, as described in this Lawsuit, and that such actions were unlawful and would result in injury to the Plaintiffs, and agreed and understood that each would act in concert with the other to achieve this purpose.

161. Defendants undertook these actions for personal gain and for their own benefit.

162. Defendants undertook these actions with malice and intent to injure the Plaintiffs.

WHEREFORE, GTS TRANSPORTATION CORPORATION, ROMAN BURZA, and TOMAS STIRBYS, respectfully requests that this Court enter judgment in their favor; award them compensatory damages in an amount to be determined at trial; award them punitive damages in an amount sufficient to punish Defendants, ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; TEAM LINE, LLC; SAULIUS LAURYNAS; AISTE RIMKUTE; and KHALILILLO ABDULLAEV, and deter such misconduct in the future; award Plaintiffs costs incurred in bringing this action; and such other and further relief as this court may deem appropriate and just.

**COUNT XII – COMMON LAW INJUNCTIVE RELIEF (By Plaintiffs against the Defendants)**

163. The Plaintiffs restate and reallege paragraphs 1 through 72 and 79 through 162, as if fully set forth herein.

164. Aside from monetary damages caused by the Defendants' conduct, irreparable harm is being done to Plaintiffs' reputation and business, because of the Defendants' ongoing spread of false information, appropriation of Plaintiffs' data, and poaching of GTS' agents.

165. Plaintiffs have no adequate remedy at law and are seeking an injunction requiring the Defendants to remove all his false publications about the Plaintiffs and to enjoin them from making any further public posts on any platform or by any means of communication about the

Plaintiffs, including, but not limited to email, Google, Facebook, YouTube, Pinterest, LinkedIn, Telegram, WhatsApp etc.

166. Plaintiffs are also seeking an injunction requiring the Defendants to stop contacting and recruiting Plaintiffs' agents, including truck drivers and dispatchers.

167. Further, Plaintiffs are seeking an injunction requiring the Defendants to destroy and keep confidential all data and information obtained from the Plaintiffs by way of their prior agency with GTS and by other nefarious means, such as hacking into the Plaintiffs' computer system.

168. No amount of money damages can adequately compensate the Plaintiffs for the damage to their reputation done by Defendants' conduct as alleged above.

169. When the equities are balanced, they heavily favor Plaintiffs, as no just reason exists for the Defendants to continue to engage in the wrongful conduct complained of in this Lawsuit.

WHEREFORE, the Plaintiffs, GTS TRANSPORTATION CORPORATION; ROMAN BURZA, and TOMAS STIRBYS, pray that this Court enter judgment against the Defendants, ARTHUR PROSKURINAS; ROMAN IESYPOV; MAKSIM KARDASEV; SAULIUS LAURYNAS; AISTE RIMKUTE; TEAM LINE, LLC; and KHALILILLO ABDULLAEV, and grant the following injunctive relief:

A. An order requiring Defendants to remove all negative posts and reviews about the Plaintiffs from any and all platforms, including, but not limited to, Google, Facebook, Instagram, Pinterest, WhatsApp, Telegram, and others;

B. An order enjoining Defendants from making any further posts, publications, or circulating any defamatory communications about the Plaintiffs, via any email, or any

other platform, including, but not limited to, Google, Facebook, Instagram, Pinterest, WhatsApp, Telegram, and others;

C. An order enjoining the Defendants from communicating with Plaintiffs' agents or employees;

D. An order enjoining the Defendants from contacting any of the Plaintiffs' clients;

E. An order requiring the Defendants to identify all materials and data appropriate from the Plaintiffs and requiring them to destroy and stop using all such materials and data in their possession;

F. An order awarding Plaintiffs punitive damages;

G. An order awarding Plaintiffs their costs; and/or

H. An order granting such other and further relief as this Court deems appropriate and just.

**COUNT XIII – SUCCESSOR AND/OR ALTER EGO LIABILITY, CIVIL CONSPIRACY, AND INTENTIONAL INTERFERENCE BY ROGUE CARRIER, INC. (By Plaintiffs against the Rogue Carier, Inc.)**

170. Plaintiffs restate and reallege paragraphs 1 through 169, as if fully set forth herein.

171. Upon information and belief, Rogue knowingly participated in and/or benefitted from the unlawful scheme orchestrated by Team Line and the Individual Defendants to misappropriate GTS's trade secrets, customers, and business relationships.

172. Upon information and belief, Rogue knowingly accepted the transfer of customers, assets, and operations from Team Line with knowledge of Team Line's wrongful conduct and this pending litigation.

173. Upon information and belief, Rogue intentionally interfered with Plaintiffs' existing and prospective business relationships by continuing to service customers wrongfully diverted from GTS, including Traffix and other former GTS clients.

174. Upon information and belief, Rogue acted in concert with Team Line and the Individual Defendants in furtherance of the conspiracy to injure Plaintiffs and misappropriate their business.

175. Rogue is a successor and alter ego of Team Line and is liable for all damages caused by Team Line's conduct as alleged herein.

176. As a direct and proximate result of Rogue's conduct, Plaintiffs have suffered substantial damages and continue to suffer ongoing irreparable harm.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant, ROGUE CARRIER, INC., and award compensatory damages, punitive damages, costs, attorneys' fees, injunctive relief, and such other relief as this Court deems just and proper.

Respectfully Submitted,

GTS TRANSPORTATION CORPORATION; ROMAN BURZA; TOMAS STIRBYS, *Plaintiffs*,

/s/ Boris G. Samovalov

Boris G. Samovalov, one of its attorneys

/s/ Michael C. Goode

Michael C. Goode, one of its attorneys

Boris G. Samovalov – ARDC 6305036
Zane D. Smith & Associates, Ltd.
100 N. LaSalle St., Suite 910
Chicago, Illinois 60602
312.245.0031/boris@zanesmith.com

Michael C. Goode – ARDC 3125086
Law Office of Michael C. Goode
100 N. LaSalle St., Suite 910
Chicago, Illinois 60602
312.541.1331/lawoffice_mcgoode@yahoo.com

**CERTIFICATE OF SERVICE**

I, Boris G. Samovalov, hereby certify that on February 1, 2026, I electronically filed the foregoing **Fourth Amended Complaint**, with the Clerk of the Court using the CM/ECF system. Notification and a copy of such filing was served on the Defendants via CM/ECF system.

GTS TRANSPORTATION CORPORATION, et al., *Plaintiffs*

By: /s/ Boris G. Samovalov
Boris G. Samovalov, one of their Attorneys

Boris G. Samovalov – ARDC #6305036
ZANE D. SMITH & ASSOCIATES, LTD.
100 N. LaSalle Street – Suite 910
Chicago, Illinois 60602
(312) 245-0031
boris@zanesmith.com